Syllabus.

# Richmond.

## Southern Railway Co. v. Vaughan's Administrator.

### March 16, 1916.

1. Railroads—*Grade Crossing—Obstructed View—Warning—Reflected Light From Engine.*—Light from the headlight of an engine reflected or shown upon the top of telegraph poles placed above a very deep cut would be very uncertain evidence of an approaching train to the driver of an automobile about to cross the track at grade where the track as it approached the crossing passed through a very deep cut on which there was a sharp curve at no great distance from the crossing. It is not such warning as would charge the chauffeur with contributory negligence.

2. Evidence—*Photographs—Distance Between Objects.*—Whether two houses are equidistant from the scene of a railroad accident cannot be determined from a photograph when the three objects are not in the same line of vision. If they were in the same line of vision, it might be possible to make an accurate estimate of the comparative distances of the houses from the scene of the accident, but where they are not, it would be making a conjecture based upon very uncertain conditions to assume, merely from a photograph, that the houses were of equal distance from the scene of the accident. If such fact is relied upon, it should be established by direct evidence.

3. Automobiles—*Death of Chauffeur—Lack of License—Proximate Cause.*—The fact that a chauffeur killed at a grade crossing of a railroad did not have the license required by law, and that the car he was running was not licensed will not bar recovery by his administrator, where the absence of such licenses did not proximately contribute to the happening of the accident resulting in his death.

4. Carriers—*Negligence—Automobile Crossing Railroad at Grade.*—The duty which the chauffeur of an automobile run as a carrier of passengers owes to a railroad company whose track he is about to cross at grade is that of ordinary care. He does not owe to the company the same degree of care as to his passenger.

Error to a judgment of the Circuit Court of Campbell county in an action of trespass on the case.   Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The following instructions were given by the trial court:

### A.

The court instructs the jury that if they believe from the evidence that the engineer blew the whistle and rung the bell as required by law and as stated in another instruction in this case, then they should find for the defendant.   But the jury are further instructed that even if they believe from the evidence that the whistle was not blown and the bell was not sounded as required by law, it does not necessarily follow from the mere omission to do these things that the jury should find for the plaintiff.

### (1)

The court instructs the jury that the duty of a railroad company, when its train is approaching a highway crossing, and of a traveler on the highway, when approaching. the same crossing, are reciprocal.   It is the duty of the railroad company to exercise ordinary and reasonable care to give notice of the approach of its train to the crossing; and it is the duty of the traveler on the highway and about to pass over the crossing to exercise the same degree of care, by caution in his movements and by the use of his senses of seeing and hearing, to ascertain if a train is approaching dangerously near to the crossing, so as to avoid injury to himself from such train.   And the failure on the part of either to discharge its or his said duty would be negligence.

(2)

The court further instructs the jury that it was the duty of the defendant company, and of its agents and servants who were in control of and operating its engine and train of cars, on approaching the highway crossing under consideration to sharply sound the whistle of its said engine at least twice at a distance of not less than three hundred yards nor more than six hundred yards from said crossing and to ring the bell of said engine or sound said whistle continuously or alternately until the said engine reached said crossing; and a failure to discharge that duty would be negligence.

(3)

The court further instructs the jury that, independently of the duty of the defendant and its agents and servants as set forth in instruction No. 2, it was the duty of the defendant company and of its said agents and servants to exercise ordinary care to give reasonable and timely warning to persons passing over the highway and approaching and about to pass over said crossing of the approach of its said engine and train of cars to said crossing, in order to warn persons on said highway and about to pass over said crossing of its approach, so as to enable them to avoid exposing themselves to injury from said engine and train; and a failure on the part of the defendant to discharge that duty would be negligence.

(4)

The court further instructs the jury that the negligence of the defendant in any particular cannot be presumed; but the burden rests upon the plaintiff to prove the negligence alleged in the declaration to the satisfaction of the jury, by

a preponderance of the evidence, unless they should believe that such negligence appears from the evidence of the defendant in this case.

### (5)

The court further instructs the jury that it was the duty of the decedent, Raymond W. Vaughan, on approaching the said crossing and before attempting to pass over the same, to exercise ordinary care and caution in his movements and to use his senses of seeing and hearing, to ascertain whether or not a train of the defendant was approaching the said crossing in sufficiently close proximity thereto to endanger him while crossing over; and, if he ascertained, or by the exercise of ordinary care could have ascertained that it was in sufficiently close proximity to endanger him, it was his duty not to undertake to cross over until the train had passed; and a failure to discharge these duties, or either of them would be negligence. But negligence on his part in either respect, cannot be presumed; and the burden rests upon the defendant to prove it to the satisfaction of the jury, by a preponderance of the evidence, unless they should believe that such contributory negligence appears from the evidence of the plaintiff in this case.

### (5½)

The court instructs the jury that the duty of an automobile driver approaching tracks where there is restricted or obstructed vision to stop, look and listen and to do so at a time and place where stopping and where looking and where listening will be effective is a positive duty. And if the jury believe from the evidence in this case that Raymond W. Vaughan failed in this duty, then he was guilty of such contributory negligence as will prevent a recovery in this action.

(6)·

The court further instructs the jury that ordinary care, as expressed in the foregoing instructions, as applied to each, the decedent and the defendant, means such care and caution as an ordinarily prudent and reasonable person would have exercised under the same circumstances, conditions and surroundings.

(7)

If the jury believe from the evidence that the decedent, Raymond W. Vaughan, suffered injury and death from collision with defendants' engine or train, as charged in the declaration, and that said collision was caused by the negligent failure of the defendant or of its agents and servants who were in charge of and operating said train to give warning of its approach to said crossing, both by negligently failing to sharply sound the whistle and ring the bell as is mentioned in instruction No. 2, and also by negligently failing to give any other reasonable and timely warning of the approach of said train to said crossing, as is mentioned in instruction No. 3, then they should find for the plaintiff; unless they shall further find from the evidence that the decedent, Raymond W. Vaughan, was guilty of negligence in undertaking to pass over said crossing at that time. But if the jury shall find from the evidence that the defendant and its said agents and servants were not guilty of negligence in the respects, as mentioned above, or that the said decedent was guilty of contributory negligence in going upon the crossing at that time, either because he was guilty of negligence in failing to ascertain the dangerous approach of the train to said crossing, or otherwise, then they should find for the defendant.

(8)

If the jury shall find that the plaintiff is entitled to recover in this case under the law and the evidence, then in ascertaining the damages they may consider:

First. The pecuniary loss sustained by the decedent's infant child, by his death, fixing the same at such sum as would be equal to the probable earnings of the said Raymond W. Vaughan, taking into consideration his age, business capacity, experience and habits, health, energy and perseverance, during what would probably have been his lifetime, if he had not been killed.

Second. By adding thereto compensation for the loss of his care, attention and society to his infant child. But not to exceed ten thousand dollars in all.

(9)

The court instructs the jury that a higher degree of caution is required, at a highway crossing, of both the traveler on the highway and of the railroad company, where the view is obstructed and the contour of the land is such as to render less audible the noises of the moving train, than if the view was not obstructed and the contour of the land was such as to render more audible the noises of a moving train; the degree of caution required on the part of both the traveler and the railroad company being in proportion to the danger from the existing conditions. And it is for the jury to determine from the evidence what were the facts in this case, and whether or not the decedent and the defendant either or both, exercised the required degree of care under the circumstances.

(10)

The court instructs the jury that ordinary care does not require one absolutely to refrain from exposing himself to danger. It does require, however, such watchfulness and pre-caution to avoid coming in contact with danger as a person of ordinary prudence would use under like circumstances, in view of the danger to be avoided.

The following instructions were asked for by the defendant but refused:

(2)

The court instructs the jury that it was the positive duty of Raymond W. Vaughan in crossing the railroad track to have avoided the accident which resulted in his death if he could have done so by the exercise of the utmost practicable care.

(3)

The court further instructs the jury that under the circumstances of this case it was the duty of Raymond W. Vaughan, if necessary in order to avoid the collision, to have gotten out of the automobile himself and gone forward to the crossing and looked and listened for the train, or to have gotten Mrs. Perrow, the lady who was in the automobile with him, to have gotten out and gone forward to the crossing and looked and listened for the train. And if the jury believe from the evidence that by these means or either of them the accident would have been prevented, the jury should find for the defendant.

(4)

The court instructs the jury that if they believe from the evidence that the headlight of the engine was lit, and that Raymond W. Vaughan, if he had looked just before he started across the track could have seen the light therefrom shining in or on the sides of the cut, or elsewhere, they should find for the defendant.

(5)

The court instructs the jury that if they believe from the evidence, that Raymond W. Vaughan, the plaintiff's decedent, at the time of the collision between the engine and the automobile which resulted in his death was in the employment and

pay of the Virginian Transfer Company as a chauffeur, and had not procured a chauffeur's license from the secretary of the Commonwealth, they must find for the defendant.

### (6)

If the jury find from the evidence that the automobile which was being driven by the plaintiff's decedent, Raymond Vaughan, at the time of the collision which resulted in his death, was not registered with the secretary of the Commonwealth in the name of the then owner or owners of the said automobile, then the jury are instructed that they must find for the defendant.

### (7)

The court instructs the jury that if they believe from the evidence that Raymond Vaughan, the plaintiff's decedent, at the time of the collision between the engine and the automobile which resulted in his death was in the employment and pay of the Virginian Transfer Company as a chauffeur, and had not procured a chauffeur's license from the secretary of the Commonwealth, then the jury are instructed that the operation of the automobile by the said Vaughan was evidence of negligence on his part.

*Coleman, Easley & Coleman,* for the plaintiff in error.

*Volney E. Howard* and *I. P. Whitehead,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This suit was brought by Vaughan's administrator to recover damages from the Southern Railway Company for the wrongful death of his decedent.

The facts are, that Vaughan was a chauffeur in the employment of the Virginia Transfer Company, and at the time of the accident was taking a female passenger in an automobile to her home in the suburbs of Lynchburg. In undertaking to cross the railroad track at a highway crossing, both Vaughan and his passenger, Mrs. Perrow, were killed by a train of the Southern Railway Company. The occurrence took place on the 2d of May, 1914, at 7:40 P. M. The sun on that day, according to the almanac, sets at two minutes past seven. Considered as upon a demurrer to the evidence, it must be taken as established by the plaintiff that in approaching the crossing no bell was rung, no whistle was sounded and no signal given by any other means of the approaching train. The train was running about twenty-five miles an hour, down grade and drifting. The track as it approached the crossing passed through a very deep cut in which there was a sharp curve at no great distance from the point at which the railroad crossed the highway. The evidence tends to prove that the automobile was moving slowly, and that when it had approached to within five feet of the railroad track it was stopped, as one of the witnesses for the plaintiff testified he supposed, to listen and look out for a train; that in a few seconds it moved on, and just as it got upon the track the train rushed out upon it and killed both the driver and his passenger.

When the evidence had all been adduced, instructions were asked for on behalf of the plaintiff and the defendant, and the case having been submitted to the jury, it brought in a verdict against the defendant for $6,250, upon which judgment was rendered by the court, and the railway company has brought the case here upon a writ of error.

Under the circumstances disclosed the railway company cannot successfully deny that it was guilty of negligence, but it is claimed that Vaughan, the driver of the automobile, was guilty of contributory negligence, and was himself the author of the wrong. In support of this charge the railway company

insists that the headlight of the engine was in full operation; that it was a light of great power, and its effect is somewhat picturesquely described by counsel for the plaintiff in error as flooding the cut through which the train approached with light, and if the defendant in error's intestate had paid the slightest heed to the situation he could not have failed to be warned of the approaching train.

If the track had been straight, there might be force in this position, but the evidence aided by the photographs taken shows that this crossing was one presenting conditions of unusual difficulty and danger. The view of the traveler was obstructed by a shoulder of the hill through which the cut passed, and, there is a sharp curve in the cut at no great distance from the highway. The light of the headlight of the engine was, of course, projected in a right line to the front, and at the curve would illuminate, not the track, but the wall of the cut; and it is proper to mention here that the counsel for the railway company, as illustrating the power of the light, points out its reflection upon the telegraph poles along the railway line, and that it was sufficiently bright to disclose the number of cross-bars upon the poles. But when we consider that the cut was many feet deep, and that the long telegraph poles were upon the top of the cut, it is obvious that the light reflected or shown upon the top of the poles would be a very uncertain evidence of an approaching train to the driver of an automobile at the time under consideration.

As we have seen, a witness for the defendant in error testified that the automobile was stopped at a distance of about five feet from the nearest rail, while two witnesses for the plaintiff in error, the engineer and fireman, testified that the automobile did not stop at a distance of five feet from the rail, but stopped upon the track under conditions which rendered it impossible to avoid the accident. It is earnestly argued on behalf of the plaintiff in error that the testimony of the witness on behalf of the defendant in error is wholly unworthy of belief, as he

states what was practically impossible; and that his evidence being disregarded the testimony of the plaintiff in error establishes the fact that the automobile stopped upon the track and not near it.

The argument against the credibility of Smith, the witness, for the defendant in error rests upon the proposition that his house is shown to be a quarter of a mile distant from the scene of the accident. Smith testified that he was at the time he witnessed the accident at the house of one Brooks, and a photograph is then introduced from which plaintiff in error argues that Brooks' house, from which the accident was viewed by Smith, is as far from the scene of the accident as Smith's own house, which he testified is a quarter of a mile distant.

We cannot yield assent to this argument. If the houses of Smith and Brooks and the place of the accident were in the same line of vision, it might be possible to make an accurate estimate of the comparative distances of the two houses from the crossing, but such is not the case, and we would be making a conjecture based upon very uncertain conditions were we to assume, merely from the photograph, that the house of Smith and that of Brooks from which the witness made his observation were of equal distances from the point of the accident. The fact is an important one and could easily have been placed beyond the reach of controversy by having the distances measured. If the distances had been measured, and if it appeared that Smith's observation was made at a distance of a quarter of a mile, it might well be doubted whether or not it was possible to tell the distance from the track at which the chauffeur stopped the automobile; but taking the facts as they appear, we cannot say that the testimony of Smith was certainly unworthy of belief and should have been disregarded by the jury who saw and heard the witness.

The plaintiff in error contends very earnestly that the automobile which was wrecked was being operated upon the highway without a license, and that the chauffeur was himself without a license; that the statute law of the State has pre-

scribed in great detail regulations for the operation of automobiles and other vehicles whose motive power is other than animal power on the public highways of this State; and that the statute declares that it shall be unlawful for any person to operate any automobile, or other vehicle drawn and propelled by any power except animal power, on any public highway of the State, except and until such person shall comply with the provisions of the statute. In support of this view two cases from the Supreme Court of Massachusetts are cited, one of them *Commonwealth* v. *Kingsbury,* 199 Mass. 542, 85 N. E. 848, L. R. A. 1915e, 264, 127 Am. St. Rep. 513, and *Dudley* v. *Northampton Street Ry. Co.,* 202 Mass. 443, 89 N. E. 25, 23 L. R. A. (N. S.) 561.

While we recognize the dangers incident to the operation of automobiles on account of the great speed and power with which they are propelled, and that it is the duty of the legislature and of the courts, as was said by the Supreme Court of Massachusetts, "to consider the risks that arise from the use of new inventions applying the forces of nature in previously unknown ways," we could not go as far as the Massachusetts court in the cases cited without overruling well-considered cases in this and other courts dealing with kindred questions.

In quite a recent case, *Southern Railway Co.* v. *Rice,* 115 Va. 235, 78 S. E. 592, Judge Buchanan, speaking for the whole court in a carefully considered opinion, said that "An engineman of a railway company cannot recover damages from his employer for injuries suffered while running his engine within the limits of a city at a higher rate of speed than that fixed by the ordinance, if such negligence proximately contributed to the injury, and it is immaterial that the company knew that the ordinance was regularly violated by its employees. The negligence in such case is negligence as a matter of law, and it would be contrary to public policy to relieve the engineman of the effect of his violation of law upon the ground that the company and its employees were in the habit of violating the particular law."

The text writers and adjudicated cases touching upon the subject were very carefully considered in that case and the following quotations from the citations in that opinion will very clearly show the attitude of this court upon the subject in question:

"The text-books seem to be agreed that the general rule is that if the person injured was at the time he received the injury doing some act in violation of a statute or ordinance, he cannot recover, if such violation contributed to his injury.

"Shearman & Redfield, in their work on Negligence, vol. 1, sec. 104 (5th Ed.), lay it down as the general rule that 'if the plaintiff is acting in violation of a statute or ordinance at the time the accident occurred, and such violation proximately contributes to his injury, he is guilty of contributory negligence. But if such violation does not contribute to the injury, it is no defense.'

"Labatt on Master and Servant, sec. 362, says: 'There can be no question that where a servant's injury was proximately caused by the fact that he was violating a statutory or municipal ordinance the meaning and effect of which are perfectly clear, he cannot recover damages.'

"In Cooley on Torts (3d Ed.), vol. 1, pp. 273-4, it is said that the fact that a party injured was at the time violating the law does not put him out of the protection of the law—he is never put by the law at the mercy of others. If he is negligently injured on the highway, he may have redress, notwithstanding at the time he was upon the wrong side of the road, provided that act did not contribute to his injury."

See note upon this subject, Va. Law Review, December, 1915, p. 238, and cases there cited.

We think it plain in this case that there was no sort of causal relation between the violation of the statute and the wrong for which the suit was brought. The want of a license for the automobile or for the chauffeur could not by any possibility have contributed proximately to the happening of this most unfortunate occurrence.

It is insisted on behalf of the plaintiff in error that inasmuch as Vaughan was a carrier of passengers, he should be held to the very highest degree of care. This would be true as between the chauffeur and his passenger, but is not the measure of duty as between the chauffeur of the automobile and the railway company, as to which he only owed the duty of exercising reasonable care for his own protection.

The case of *Washington & Mt. Vernon Ry. Co.* v. *Trimyer,* 110 Va. 856, 67 S. E. 531, relied upon by plaintiff in error in support of its contention, was a suit brought by a passenger, who was entitled to require that the railway company should exercise the utmost care and diligence of a cautious person to protect him from injury.

What we have said sufficiently indicates our views upon the law and the facts of this case. We think the jury were fully and fairly instructed upon the law, and that the facts are sufficient to support their verdict. Upon the whole case, we are of opinion that the judgment should be affirmed.

*Affirmed.*