## Staunton

JOSEPH C. DRISCOLL v. VIRGINIA ELECTRIC & POWER COMPANY, ET AL.

September 19, 1935.*

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

*Rehearing denied September 15, 1936.

The opinion states the case.

*Aubrey R. Bowles, Jr., Willis D. Miller* and *A. Scott Anderson,* for the plaintiff in error.

*T. Justin Moore, Archibald G. Robertson* and *Richard H. Mann,* for the defendants in error.

BROWNING, J., delivered the opinion of the court.

This case is before this court upon a writ of error granted to Joseph C. Driscoll, the plaintiff in the court below, complaining of a verdict and judgment in favor of the Virginia Electric and Power Company and W. E. Blanton, defendants, in said court.

In such relationship in that court they will be generally referred to hereafter.

The defendant company has operated for a number of years its interurban cars over its track, constructed on or about the middle of the highway, extending between the cities of Richmond and Petersburg, under a franchise granted to a predecessor company by the Board of Supervisors of Chesterfield county, and later also under an agreement with the Commonwealth of Virginia, acting through the State Highway Commissioner. The derivation of the defendant's rights in the way over which its trackage traverses is mentioned because it is stressed by the plaintiff in his briefs, though it is thought that it has little to do with the issues before us.

On each side of the defendant's track is a concrete highway eighteen feet wide. Traveling south from Richmond towards Petersburg, as was the plaintiff on the day of the accident, the right-hand or west concrete highway is used by the traffic. Going north in the direction of Richmond from towards Petersburg the right-hand or east concrete highway is so used.

The total distance across the track from concrete to concrete is thirty-five feet. The width of the track from

the center of one rail to the center of the other is four and three-quarters feet. At intervals there are track crossings to enable traffic to pass from one concrete highway to the other and in some instances these crossings lead directly to streets which strike the concrete highways at right angles. Along the highways and some of these streets there are settlements more or less populated.

One Zeller operated a dairy and one of the routes for the delivery of his products was in the vicinity which we have somewhat described. The plaintiff had been employed by Zeller for some weeks and at the time of the accident he was accompanying a Mr. Ford, who was the regular driver of the milk truck on that route, for the purpose of acquainting himself with the route and the customers to be served, which was preparatory to the plaintiff's taking over the truck and serving the trade on the route. This he was to have done two days later than the day of the accident. He had been serving his apprenticeship under Ford for five or six days prior thereto. The accident occurred on the morning of February 27, 1933, between 11:30 and 12 o'clock.

A mile or more south of the limits of the city of Richmond, in Chesterfield county, there was a crossing known as Concord avenue, extending east from the concrete highway. The milk truck was driven by Ford and the plaintiff sat at his right side on a milk crate, in the truck, next to an open door space, on his right. The open space extended up from the floor of the truck.

The truck was proceeding southwardly towards Petersburg on the west concrete highway approaching Concord avenue, and the defendant's car operated by its motorman, W. E. Blanton, was also going southwardly *en route* to Petersburg. Opposite Concord avenue the driver of the truck made a left turn eastward to pass over the crossing. In his effort to accomplish this his truck was struck by the oncoming interurban car. The driver, Ford, was killed and Driscoll's left leg was cut off between the ankle

and the knee and he suffered some brain injury. This suit was predicated upon the alleged negligence of the defendants, of which, the particulars will be presently noticed.

The defendant company denied any negligence in the operation of its interurban car and affirmed that it was guilty of no act or omission which proximately caused or concurred to cause the accident and the consequent injuries to the plaintiff. Its defense was further based upon the alleged contributory and concurrent negligence of the plaintiff and the driver of the truck which proximately caused or contributed to cause the accident. ·

· At the trial of the case, when the plaintiff had concluded his evidence, the defendant moved the court to strike it out as being insufficient to sustain a verdict in the plaintiff's favor. This motion was overruled and upon the conclusion of all the evidence the motion was renewed to strike out the plaintiff's evidence which motion was subsequently enlarged to embrace or include all the evidence. The court sustained the latter motion and instructed the jury that in order for the plaintiff to recover he must prove his case by the preponderance of the evidence and having withdrawn from the jury all the evidence that there was no evidence upon which it could find a verdict for the plaintiff. Under this instruction the jury found a verdict for the defendant. The plaintiff lodged exceptions to the several actions of the court and asked that he be permitted to argue the case to the jury upon the evidence of the defendant, adhering to the position that the defendant was bound by its motion, before it was enlarged to strike all the evidence, to strike only the plaintiff's evidence. The plaintiff tendered a number of instructions embodying his view of the law as applied to his conception of the facts and their legal effect. These instructions were refused.

In our opinion it is unnecessary to further advert to these questions of court procedure and rulings.

The plaintiff's theory of the case is that the motorman

saw the truck traveling south on the right-hand side of the west concrete highway some distance north of the point, 670 feet north of the Concord avenue crossing, and when the car reached the latter point the truck had then "turned into the crossing"; that its passage over the crossing, at a reasonable and lawful rate of speed, became blocked by the northbound automobile traffic on the east concrete highway, when the interurban car was 385 feet north of the crossing, which situation was seen by, or should have been seen by, the motorman; that the motorman saw, or should have seen, the automobile traffic passing north which obstructed the plaintiff's way while the truck was on the crossing; that it was the duty of the motorman to bring the car under control so as to avoid the accident which he could have done, as the car could have been stopped within 200 feet or less at the rate of speed at which it was going; that the car ran on at unslackened speed until it collided with the truck, which was forced down the track and beyond the crossing a distance of some eighty feet, nearly severing, on its way, a standing pole some twelve inches in diameter and demolishing the truck with the resultant death of the driver and injuries to the plaintiff; that there was no duty upon him to assume that the car would "so run him down in broad daylight".

The defendant's theory is that a car coming from Richmond can be seen by a person on the Concord avenue crossing for a distance of 3,100 feet; that the plaintiff was perfectly familiar with the surroundings; that he had crossed the same crossing on the milk truck before the day of the accident and was therefore chargeable with notice of the conditions, including the usual traffic on both of the concrete highways; that despite the fact that the plaintiff had no control over the movements of the truck and that the negligence of the driver, if such negligence there were, cannot be imputed to the plaintiff, still the plaintiff had control of his own actions and that he was chargeable with the duty of self-preservation; that

he saw the interurban car three times before the collision, the first time when it was 670 feet from the crossing, again when it was about 385 feet distant, and the third time when it was fifty feet away; that when he saw the car the second time the wheels of the truck were on the track; that the plaintiff then realized that the truck was blocked by the northbound traffic; that the interurban car was rapidly approaching and that the plaintiff knew at the time that the truck could not make the crossing; that he sat in the truck while it made the turn and approached the crossing and came on the crossing without warning the driver or saying one word to acquaint him of the imminently approaching presence of the car; that he sat in the truck, at an open space with only two short steps to the ground, an exit to safety, while it was moving over the track and permitted himself to sustain the suffered injuries; that the truck never stopped on the track but was "inching" its way all the time at a speed of about five or six miles per hour; that such acts and omissions fix upon the plaintiff contributory and concurrent negligence preventing a recovery in this case and justifying the judgment of the court.

The plaintiff testified that he first saw the interurban car when it was some 670 feet north of the crossing; that then the wheels of the truck were about on the concrete or a little way off of it; that the driver then just "inched along"; that the traffic had them blocked off; that at the time of the crash some of the blocking automobiles had passed but not all of them; that at that time the front of the truck was very nearly in the concrete on the east side; that when he glanced back and saw the car about fifty feet away "it looked like he (the driver) was looking down but just as I looked he looked up"; that at that time the car "might have been coming pretty rapidly; that he said nothing at all to Mr. Ford (the driver); that the time which elapsed, between the first and second times that he saw the car, was about four or five seconds.

The following are some of the questions and answers in the plaintiff's cross-examination:

Q. And the second time you looked at it did you look forward then to see what the traffic was on the other side, the eastern side of the turnpike?

A. Yes, sir; my whole attraction was on the traffic, the main part of the traffic on the highway, really.

Q. I didn't get your answer.

A. I say my attraction was on the traffic, too, on the highway because I had known we couldn't make it.

\* \* \* \* \* \* \* \* \* \*

Q. Why didn't you get out of the automobile?

A. Well, Mr. Mann, you ask me that question and I simply answer you in a nice way; simply because I realized no danger and the motorman had ample time to stop if he had wanted to and he could have stopped if he had tried to and it wouldn't have been any accident if he had of stopped; it wasn't any use for me to be attempting to jump or anything because he had plenty of time.

Q. You relied upon the motorman to stop the car?

A. Well, if he saw it in time he would have stopped when he saw our predicament that we couldn't get across the highway for the cars there. It was nothing for him to do but look; it was a clear view in there.

Q. That was your reason for not getting out on account of the fact you relied on the motorman to see you and stop?

A. I realize he could have stopped if he had wanted to.

Q. That was the reason for not getting out of the truck?

A. That was the reason, simple whole reason he could have stopped. He had plenty of space to do it.

If the motorman's negligence were conceded, still in the light of this testimony the plaintiff convicts himself of contributory and concurrent negligence which was the proximate cause of his injuries. His counsel urges that if he had alighted from the truck there is no evidence that he could have escaped disaster. This does not impress us for the plaintiff tells us that his "whole reason"

for not getting out of the truck was that he relied on the motorman to stop. Before he answered the categorical question which elicited this direct answer, he said, in answer to another question of similar import that he realized no danger. But he should have realized danger if, as he said, the car was moving rapidly and the motorman was looking down and, forsooth, did not see the truck in time to stop. We note too that the truck was barely moving over the track and that there were just two steps between the plaintiff and escape, one from the open space of the truck at which he was sitting, to the running board and the other to the ground. It is also in evidence that the usual time for the milk truck to be at Burrough's Store was 9:30 o'clock A. M. and on the morning of the accident it reached there around 11 o'clock. It is not unreasonable to cite that fact as pointing to a probable effort to make up lost time and to take chances to accomplish it. Burrough's Store was at Stop 2 which was hardly a sufficient distance from the point of the accident in which the wanting time could have been recovered.

What this court said in the case of *Hancock* v. *N. & W. Ry. Co.,* 149 Va. 829, 141 S. E. 849, 852, although a steam railway case, we think is pertinent:

"The law in Virginia requires a passenger or guest in an automobile to use ordinary care for his safety in approaching and crossing a railroad track. This law she confessedly ignored and was immediately in collision with the locomotive. Under this state of facts the law fixes negligence upon her, and there is no issue for the jury to determine. *U. S. Spruce Lumber Co.* v. *Shumate,* 118 Va. 471, 87 S. E. 723; *Norfolk & W. Ry. Co.* v. *Sink's Ex'r,* 118 Va. 439, 87 S. E. 740; *Southern Railway Co.* v. *Vaughan,* 118 Va. 692, 88 S. E. 305, L. R. A. 1916E, 1222, Ann. Cas. 1918D, 842; *Virginia & Southwestern Ry. Co.* v. *Skinner,* 119 Va. 843, 89 S. E. 887; and *Murden* v. *Va. Ry. & Power Co.,* 130 Va. 449, 107 S. E. 660."

This court has in three comparatively recent cases an-

nounced and applied the law which is controlling in this case. The facts in those cases are similar, but, of course, not identical with those in the case before us. The distinguishing facts, we think, do not impair their applicability to this case or lessen the force of the principles of law declared. They are: *Virginia Electric & Power Co.* v. *Bennett,* 156 Va. 910, 159 S. E. 93; *Virginia Electric & Power Co.* v. *Jayne,* 151 Va. 694, 144 S. E. 638; *Dick* v. *Virginia Electric & Power Co.,* 158 Va. 77, 163 S. E. 75, 77.

In the case of *Dick* v. *Virginia Electric & Power Co.,* it was said:

"If it be conceded that the motorman was negligent, in failing to keep a proper lookout and exercising reasonable care to discover the presence of the plaintiff on the crossing, and that he should have known her perilous situation in time to avoid the accident, still the plaintiff saw the oncoming car for over 561 feet, she saw it within 100 feet of her, when she admits that she had time to get out and save herself. She sat in the very presence of imminent danger without taking thought for her own safety, except her reliance upon the motorman to drive up to her and stop, and this in spite of her statement that she thought it highly possible that he would not see her. And there was reason for this statement. It was a dark night and the lights from the plaintiff's car shown to the west rather than towards the motorman. * * *

"Mr. Justice Epes said, speaking for the court, in the case of *Barnes* v. *Ashworth* [154 Va. 218, 153 S. E. 711], *supra,* and quoting from the case of *Virginia & S. W. Ry. Co.* v. *Skinner,* 119 Va. 843, 89 S. E. 887: 'No one can be allowed to shut his eyes to danger in the blind reliance upon the unaided care of another without assuming the consequences of the omission of such care.'

"In the case of *O'Neill* v. *Middlesex & B. St. Ry. Co.,* 244 Mass. 510, 138 N. E. 841, the plaintiff's automobile stalled on car track. The plaintiff and his brother tried to push the automobile off the track. The plaintiff saw

the car when it was about 200 yards away and his brother ran up the track and tried to stop it, but failed to do so. The plaintiff was struck by the car and injured. The court, in denying recovery (244 Mass. 510, 138 N. E. 841, at page 842), says: 'We are unable to draw any inference from the evidence, except that the plaintiff's lack of care contributed to his injury. Apparently he relied entirely on the motorman to bring the electric car to a stop before it reached the automobile. But the night was dark, and the auto was where the motorman would not expect a vehicle to be. And although the plaintiff saw the car when it was 200 yards away, and heard it approaching with undiminished speed, he needlessly remained in a place where he was sure to be hit, when a step or two would have placed him beyond danger of injury. Without considering the other defenses, the ordering of a verdict for the defendant was justified on this ground.' "

■ The doctrine of the last clear chance does not apply here because the motorman was not charged with notice that the truck would not move off the track.

We find no error in the judgment of the trial court, and it is therefore affirmed.

*Affirmed.*

HUDGINS, J., dissenting.

The evidence for plaintiff, briefly stated, tends to establish that as the front wheels of the truck, traveling five to ten miles per hour, reached the western rail, the street car was more than 400 feet from the crossing. The driver of the truck was momentarily delayed, on the crossing, by the northbound traffic on the highway east of the crossing. The truck and the northbound traffic were in plain view of the motorman, but notwithstanding this fact, the speed of the street car, which was said to be from forty to forty-five miles per hour, was not diminished until the impact. This is sufficient, if believed by the jury, to convict the defendant of gross negligence.

The majority opinion holds, that the right of the plaintiff to recover is barred, on the ground that his answers to questions propounded to him on cross-examination prove he was guilty of contributory negligence as a matter of law. In so holding, there is invoked the rule that no litigant can be heard to ask that his case be made stronger than he makes it, where it depends upon facts within his own knowledge, and as to which he has testified. See *Massie* v. *Firmstone,* 134 Va., 450, 114 S. E. 652.

In the first place this rule is not of universal application, and as most rules, adopted for the determination of justice between man and man, should not be applied as a mere rule of thumb. The record discloses that plaintiff was badly injured in the wreck. One leg was so mashed and mangled, that it was only held together by a single tendon, which was later cut. His head was severely lacerated and bruised, his brain was badly shaken. The doctors testified that at the time of the trial, the injury to the head "would actually give him a greater amount of disability than the injury to his leg," and this leg was amputated six inches above the ankle; that the head injury would probably induce a complete change in personality; that he suffered with headaches, dizziness, irritability, weakness, lack of energy, and a tendency towards depression and worry. His eyes were weak, watery, and jumpy. Such was the condition of plaintiff according to the testimony of Drs. I. A. Bigger, W. G. Crutchfield, and C. C. Coleman, at the time he was called to testify in his own behalf.

After his examination in chief, he was subjected to a long, vigorous, and severe cross-examination by astute counsel, during the course of which, and in reply to leading and suggestive questions, he gave the answer quoted in the majority opinion. Under the circumstances I do not think plaintiff's mentality was altogether normal, and in view of the physical facts and the testimony of eye witnesses, other than plaintiff, tending to show that defend-

ant was guilty of gross negligence, I am firmly of opinion that the rule announced in *Massie* v. *Firmstone, supra,* and other cases, should not be applied in this case, and that plaintiff's right to recover should have been submitted to a jury. For these and other reasons, I think the judgment entered by the trial court for defendant should be set aside, and the case remanded for a new trial.