# Richmond

ERNEST E. HARRELL v. VIRGINIA ELECTRIC AND POWER
COMPANY.

January 13, 1941.

Record No. 2295.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

*Robin L. Marquart* and *Rixey & Rixey,* for the plaintiff in error.

*T. Justin Moore, Archibald G. Robertson, L. S. Parsons* and *R. E. Miller,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

By motion for judgment, the plaintiff, Ernest E. Harrell, sought to recover from the Virginia Electric and Power Company compensation in damages for injury to himself and to his automobile. That motion was based upon an accident which occurred in Norfolk on March 2, 1939, at about nine o'clock at night. He obtained a jury's verdict, but that verdict was set aside by the court, which entered final judgment for the defendant.

It happened on 25th street, between Llewellyn avenue and De Bree avenue, and near the center of that block. These streets are straight and level and cross each other at right angles. The street car tracks down 25th street are made up of two lines, for eastbound and westbound traffic. The car that did the damage was moving west. Plaintiff's automobile stood in front of his shop in this

block and near its center. He came out and entered it with the intention of making a "U" turn to the east. There was some trouble with his battery, but the motor picked up, and he proceeded on his way until he reached the westbound street car track, when it stalled and stood nearly at right angles across it from five to eight minutes and so stood until struck by the oncoming street car. Visibility was unusually good. There was some reflection from a recent fall of snow, and the moon was within three days of being full, although obscured, it is true, by some clouds.

In these conditions this motorman came across Granby street, still farther to the east, across Llewellyn avenue, and on until he ran into the stalled automobile. He offers no explanation of his conduct beyond the fact that he was dazed by a street light at the Llewellyn avenue crossing. That he could have seen this stalled automobile had he been looking is too plain for argument.

██ As a further defense, the defendant points out that there is a city ordinance which prohibits a "U" turn in the middle of a city block. There is such an ordinance, but one can not run down or maim another merely because an ordinance has been violated.

The plaintiff was negligent also. During all of this time he sat in his automobile, a single-seated closed Chevrolet, and labored with its starter. The street car was lighted and was equipped with a standard headlight. He saw it when it was more than a thousand feet away. It was coming at normal speed, and he must have known about what that speed was; he had time enough to get out of his automobile and so had the same chance to avoid an accident that the motorman had. If one had a clear chance, the other had. Harrell tells us what he did: "I got out this way (demonstrating), put my left foot on the ground, brought this one out, shoved the door as long as I could, yelled at the man, and jumped for my life."

He said that "when I got my feet on the ground it looked to be 30 or 35 feet from me," and elsewhere he

said that had it been 20 feet farther off, "I might have made it."

We need not concern ourselves with seconds or parts of seconds. He was, of course, familiar with his own automobile and should have known how long it would take him to get away. If he failed to allow himself time enough for this, he took the risk.

Plaintiff testified on his own behalf as did two other witnesses. Mr. Frank R. Coleman said that he was looking at Harrell, who was trying to start his automobile. "It (the street car) was within eight feet of the car when he decided to get out." Mrs. Erma Daniel said that the street car was probably then its length away—"Q. The length of the street car? A. Yes, probably a little more." Again the witness said that she could not state in feet how far away the street car was. "A. I noticed Mr. Harrell getting out and it was too close for my comfort. Q. Up to that time, Mr. Harrell made no attempt to get out of that car, that you saw? A. No, he didn't." It was then that this witness began to get excited and threw her hands over her eyes that she might not witness what appeared to be an impending tragedy. Immediately after the accident she heard Harrell say to the motorman: "Good God, couldn't you see me!"

It is further said that plaintiff might have gone free had his overcoat not been caught at the bottom of his automobile door.

"Q. Was there anything that kept you from jumping for your life at the last moment?

"A. The only thing that I could think that kind of held me back was the overcoat. The overcoat was caught in some manner in the bottom of the door.

"Q. Is this the coat (exhibiting a garment)?

"A. That is the coat, yes, sir.

"Q. Show us where it was caught.

"A. Caught here (indicating). When I closed the door, it might have been caught in the bottom of the door. I know that held me back some."

       *      *      *      *      *

"Q. Those holes were made at the time, were they?

"A. Oh, yes, at the time, yes, sir."

That Harrell was hurried and excited is perfectly plain. He, as he expressed it, "shoved the door as long as I could, yelled at the man, and jumped for my life." That he attempted to shut the door at all is indicative of his state of mind. Nothing was to be gained by it; it was an automatic act, done in an emergency for which he was in part responsible, and it was then that the tail of his overcoat got caught under the door and held him "back some." Had he left his automobile as men ordinarily leave their automobiles the tail of his overcoat would not have caught under the door, and if in slamming its door the tail was caught, he could have released it in a moment had the time not been desperately short. Mr. Harrell was interested in getting his car out of the way and was relying upon the motorman to stop, as is shown by the observation that he first made to him.

It is further contended that the plaintiff relied upon the motorman to slow down or stop at Llewellyn avenue. In cross examination on this point he said that the motorman did neither of these things. Further on his evidence reads:

"Q. Mr. Harrell, you say you saw the street car coming all the time, you were watching it, and it was not checking its speed at all?

"A. I did.

"Q. It was apparent to you that he was not making any effort to stop, as far back as Llewellyn avenue?

"A. Ordinarily, you would think that the man was going to stop at the corner there. I knew in my own mind—

"Q. I am talking about when it left Llewellyn avenue now; you saw he was not making any effort at all to stop when he left Llewellyn avenue?

"A. When he approached Llewellyn avenue I don't know what he did. When he got to me I had to get out

of the car. When I got out on the ground it looked like he was thirty or thirty-five feet from me. Whether he was twenty feet, or forty feet, or what not, I was anxious to get away from there.''

This plaintiff's time was taken up in trying to start his motor and to save his car. He was not then looking at the street car but was relying upon its motorman.

In *Massie* v. *Firmstone*, 134 Va. 450, 114 S. E. 652, in this statement:

''As a general rule when two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to him. In such a situation he would be entitled to have the jury instructed upon his contention, or if there were a demurrer to the evidence, the facts would have to be regarded as established in accordance with the testimony most favorable to him. This is not true, however, as to the testimony which he gives himself. No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified.''

That is to say, the evidence of a planitiff testifying for himself must be looked to as a whole and the weight to be attached must not turn upon some statement which chances to be most favorable to himself. Moreover, the west side of Llewellyn avenue was 120 feet away. When he put his left foot upon the ground, he said that the street car was 30 or 35 feet away and that had it been 20 feet farther off ''maybe I might have made it.''

''No one can be allowed to shut his eyes to danger in blind reliance upon the unaided care of another without assuming the consequence of the omission of such care. *Atlantic & D. R. Co.* v. *Ironmonger,* 95 Va. 625,

29 S. E. 319; Shear. & Red. on Neg. (6th Ed.), sec. 66.'' *Virginia & S. W. R. Co.* v. *Skinner,* 119 Va. 843, 89 S. E. 887.

This case in principle can not be distinguished from the recent cases of *Dick* v. *Virginia E. & P. Co.,* 158 Va. 77, 163 S. E. 75; *Driscoll* v. *Virginia E. & P. Co.,* 166 Va. 538, 181 S. E. 402, and *Virginia E. & P. Co.* v. *Ford,* 166 Va. 619, 186 S. E. 84.

Plaintiff also claims that he should be reimbursed for cost of repairs to his automobile, $109.13.

In some of its aspects this case is not unlike *Chesapeake & O. Ry. Co.* v. *Hunter's Adm'r,* 120 Va. 699, 91 S. E. 181. Hunter's automobile stalled on a railroad track. He was killed, and his automobile was demolished. His representative was allowed to recover for the car but not for decedent's death. He undertook to clear his car in vain. Here Harrell had ample time in which to push his car away. He was confronted by no sudden emergency; he, himself, said that he could have cleared it.

There is no error in the record. Plaintiff was negligent and the defendant was negligent, and each of them had a clear chance which neither took. The judgment of the trial court must be affirmed, and it is so ordered.

*Affirmed.*

Hudgins, J., dissenting.

The evidence for plaintiff, accepted by the jury, convicts defendant of negligence. This negligence was the failure to keep a proper lookout for other traffic while operating a street car for more than 125 feet on a business street in the city of Norfolk. Defendant seeks to avoid the consequence of its negligence by assuming the burden of establishing contributory negligence of plaintiff. Its first contention is that plaintiff violated a city ordinance in attempting to make a ''U'' turn between intersections. It is correctly held in the majority opinion that this violation of the ordinance was not a contributing cause to the collision.

The statement in the majority opinion that plaintiff is not entitled to recover for the resulting damages to his autombile because he failed to get out and push it off the tracks, imposes an unreasonable duty upon operators of automobiles on streets within corporate limits. If this doctrine is carried to its logical conclusion, the moment an automobile becomes stalled on a street car track in any city, the operator will be compelled to get out and start shoving. The practical effect of such a doctrine is equivalent to a license—certainly immunity from liability—to operators of street cars to run into automobiles so stalled. Street cars are not entitled to the exclusive use of streets. Their rights are co-extensive with other members of the traveling public.

When anyone causes an obstruction to be placed on a street or a highway, it becomes the duty of such person to use ordinary care and diligence to remove the obstruction. No engine is so perfect in performance but that it fails to operate at some time or other, usually without negligence on the part of the operator. When plaintiff's automobile stalled on the tracks, it was his duty to use ordinary care to move the automobile, then an obstruction on the tracks. The automobile was equipped with a new starting battery. Plaintiff had had no previous difficulty with its operation. When it stalled on this occasion he attempted to start the engine by pressing on the starter button. From past experience he had reasonable cause to believe that the ignition system would work within a moment or two. It did not. The headlights were shining across the street on one side and the taillight on the other. If the motorman had exercised even a slight degree of care, he is bound to have seen an object as large as an automobile across the tracks in front of him. A correct application of the doctrine of the last clear chance entitles plaintiff to recover for the damages to the automobile.

The doctrine seems to have had its origin in *Davis* v. *Mann*, 19 Eng. Rul. Cas. 190. In that case, plaintiff had

fettered a donkey and left him on the highway. The donkey was unable, because of his fetters, to get out of the way of an approaching carriage and was struck by defendant driving at a high speed. The court held that the negligence of defendant in driving his carriage was the proximate cause of the injury, and the negligence of plaintiff in leaving the donkey tied on the highway was the remote cause. If recovery is permitted for damages inflicted upon a donkey hobbled upon a highway, it would seem to me to follow that, under the same circumstances, recovery should be permitted for damages to an automobile stalled upon a city street. See *Virginia E. & P. Co.* v. *Whitehurst,* 175 Va. 339, 8 S. E. (2d) 296, and cases cited. Also see *Chesapeake & O. Ry. Co.* v. *Hunter's Adm'r,* 120 Va. 699, 91 S. E. 181.

The finding of the jury was for plaintiff. This fact makes it imperative upon this court, as well as the trial court, to view the evidence as favorably to plaintiff as it can be done within the bounds of reason. The books contain many cases in which recovery has been allowed where pedestrians have misjudged the nearness or the speed of approaching street cars, as well as where operators of automobiles have misjudged the distance or speed of approaching traffic. This court has repeatedly held that under such circumstances the jury was the proper tribunal to determine whether plaintiff was guilty of contributory negligence. The latest case so holding is *Temple* v. *Ellington, post,* page 134, 12 S. E. (2d) 826, the opinion in which was prepared by Mr. Justice Gregory and announced at this term of the court.

Neither defendant nor plaintiff had an exclusive right to use of the street. Each owed the other the duty to use ordinary care and caution to prevent injury. It became the duty of plaintiff to use this degree of care to remove his automobile as an obstruction from the street. He was pursuing one method of performing this duty; namely, trying to start his engine. It was also his duty to use ordinary care and caution for his own

safety. Who can say with mathematical precision just when he should cease to perform one duty and begin to perform another? A fair inference from his testimony is that when he realized that the street car was increasing its speed and not checking it as it approached him, he attempted to get out of the automobile and off the tracks, leaving his property to the tender mercies of defendant whose street car was approaching at increasing speed. The attempt to get off the tracks was hindered by his overcoat which was caught in some part of the door of the automobile. His statement is that he would have gotten entirely out of danger if his movement had not been checked by his coat.

Under these circumstances, the question of contributory negligence should be settled by a jury.

The difference in use, speed, weight, control and roadbed of a street car operated on the streets of a municipality and of a train operated by steam on a private right-of-way are so obvious that the rules applied to accidents on one should not necessarily be applied to accidents on the other. The majority opinion repeats that oft-quoted expression: "No one can be allowed to shut his eyes to danger in blind reliance upon the unaided care of another without assuming the consequences of the omission of such care." The trite expression contains a true principle. It was used by Judge Harrison in *Virginia & S. W. Ry. Co.* v. *Skinner,* 119 Va. 843, 847, 89 S. E. 887, in reference to a traveler injured by a steam railroad at a grade crossing. There is another principle which should not be ignored: namely; no motorman or his master can be permitted to shut his eyes and run his street car down the tracks on the streets of a municipality in blind reliance upon other travelers getting off the tracks as he approaches without assuming full consequence of such conduct.

Street car tracks in a city are not proclamations of danger as are the tracks of steam railroads in rural sections. Vehicles are permitted to cross the former in

plain view of approaching cars without the operators of such vehicles being guilty of negligence as a matter of law. The negligence of a person going upon the tracks of a street car does not become negligence as a matter of law until the approach of the street car is coupled with some superadded fact that renders it obviously dangerous to a person of ordinary prudence. The superadded fact in the case now under consideration did not make danger obvious until it became apparent that the street car was increasing rather than diminishing its speed as it approached the stalled automobile. It cannot be said that the plaintiff shut his eyes to danger. As soon as he perceived that the operator of the street car was not going to perform his duty to check the speed and stop the car, he immediately attempted to get off the tracks. He misjudged the speed of the street car or its nearness to him. Whether his conduct under such circumstances was negligent should be determined by a jury and not by a court. As the question was submitted to a jury who decided the issue for plaintiff, I think the verdict should be reinstated and judgment for him entered thereon.