# Wytheville

W. Clyde Locker v. Mary Frances Carter.

June 9, 1941.

Record No. 2330.

Present, All the Justices.

*Nottingham & Nottingham,* for the plaintiff in error.

*DeJarnette & DeJarnette,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

On the night of September 9, 1939, Mary Frances Carter, a colored woman twenty-five years of age, was walking along the Spottswood Trail between Gordonsville and Barboursville, accompanied by a colored man named Elijah Quarles. They were walking in a westerly direction on the left side of the road when a car owned and driven by W. Clyde Locker struck the young woman, inflicting upon her injuries of a serious and permanent nature. She filed suit against Locker alleging his negligent operation of the car, and the jury awarded her a verdict of $500, upon which judgment was rendered by the trial court. It is from this judgment that Locker was granted a writ of error. The parties will be referred to in the respective positions they occupied in the court below.

The only question before us is whether or not there is sufficient evidence to support the verdict of the jury.

The evidence indicates that the defendant was driving toward Gordonsville about midnight at a speed not exceeding forty miles an hour, and saw the couple walking

toward him "in a place of safety" some distance ahead. Both plaintiff and defendant were on their proper side of the highway. Code, §2154 (112 and 126f). As the defendant approached the pedestrians and after he had seen them a safe distance away, he was blinded by the headlights of an oncoming car, driven by one Clarence Johnson. The defendant did not slow down, and his vision did not clear until he was virtually upon the plaintiff, and he was unable to avoid striking her. The width of the pavement at this point was twenty feet, three inches, with a dirt shoulder on each side of approximately three feet.

The exact position of the plaintiff at the moment of impact was in serious dispute. She testified that she was on the hard surface, not more than eighteen inches from the edge of the road, and this was corroborated by Clarence Johnson, who testified that he saw the accident in the moment before his car passed that of the defendant. Elijah Quarles likewise corroborated plaintiff's testimony. However, defendant sought to impeach him by the testimony of two police officers and an independent witness who testified that immediately after the accident he gave a different version, saying that plaintiff had moved out into the path of the machine just before the accident. The defendant testified that the young woman darted in front of him and that, lacking time to apply his brakes, he swerved his car to the left but was unable to avoid striking her.

The position of the Johnson car, whose headlights blinded defendant, is not perfectly clear. Johnson himself testified that he saw the impact. Elijah Quarles thought the Johnson car had gone past before the accident, and the defendant was uncertain as to whether it had gone by or not. The plaintiff gave no testimony as to the position of the Johnson car.

After the accident defendant placed plaintiff in his car and drove her to Gordonsville, where she was given medical attention. From there she was driven to the

University Hospital in Charlottesville, where her right leg was amputated. There were numerous other injuries, and she remained in the hospital approximately one month.

The jury was fully and carefully instructed as to the law of negligence and contributory negligence. They have found, by their verdict, that defendant was guilty of negligence and that the plaintiff was free from contributory negligence. We cannot say that their verdict was not supported by the evidence.

The jury could have found, as they no doubt did, that the defendant did nothing to avoid striking the plaintiff until it was too late. Specifically, the jury could have found that the circumstances, namely, seeing the plaintiff on the edge of the road and then being blinded by the headlights of the approaching car, demanded that he stop or slow down until he could proceed without striking the plaintiff.

The case of *South Hill Motor Co.* v. *Gordon,* 172 Va. 193, 200 S. E. 637, relied upon by defendant, contains nothing that compels us to reverse the trial court in the instant case. In that case, not only was the pedestrian drunk and unable effectively to control his movements, but the motorist, who was blinded, as in the case at bar, by the headlights of an oncoming car, did not see him until a split second before the impact. That is, the motorist had no knowledge of an impending perilous situation, no warning of a possible accident, until too late to avoid striking the pedestrian. What is said in that case of the rights of motorists and pedestrians being "equal and co-ordinate," and that they "are bound to respect the rights of each other" is undoubtedly the law, and the verdict of the jury in the present case does no violence to those principles.

A reversal of the judgment below would necessitate a holding that, when both motorist and pedestrian apprehend a situation of impending peril, the motorist may hold to his course, and the pedestrian alone must

take all the responsibility of avoiding the accident. This amounts to giving the motorist a "right of way," and is contrary to any theory of "equal and co-ordinate" rights.

The judgment is affirmed.

*Affirmed.*

HUDGINS, J., dissenting.

I cannot agree with that part of the majority opinion declaring that the question of plaintiff's negligence was properly submitted to the jury. A more detailed analysis of the evidence is necessary to present my view of the case.

Mary Frances Carter, a negro woman 25 years of age, about midnight on Saturday, September 9, 1939, with Elijah Quarles, a negro man, was walking in a westerly direction along the Spottswood Trail about a mile west of Gordonsville in Orange county, when she was struck by a car proceeding in an easterly direction and driven by the defendant. Plaintiff was seriously injured. Both legs were broken. One of them had to be amputated at the hip, and the knee joint of the other was permanently injured and impaired. Her right shoulder was sprained. Other cuts and bruises were sustained. If defendant is liable at all, the sum of $500 is grossly inadequate to compensate plaintiff for the severe and permanent injuries sustained by her. The amount of the award is some indication, to my mind, that the jury's sympathy for the woman overbalanced a fair and impartial consideration of the evidence on the question of defendant's liability.

The hard surface of the highway at the point of impact is 20¼ feet wide with dirt shoulders 3 feet in width on each side. Plaintiff and Quarles were walking within 18 inches of the southern edge of the hard surface. Defendant was driving on his right side, which was also

the southern side, of the highway. While he was some distance from the point of impact he saw the headlights of a car and the two pedestrians approaching from the opposite direction. He said the pedestrians at that time were in a place of safety. He claimed that the lights of the approaching car blinded him momentarily, and, when his vision cleared, the woman pedestrian "started out in the road in front of me." Then he swerved the car to the left as much as he could but he was too close to avoid striking her. Defendant stopped within two car-lengths of the point of impact. He backed up, put the injured woman and her companion in the front seat of his car and took them to a doctor in Gordonsville.

When defendant, traveling at 30 miles an hour, saw the pedestrians walking on their side of the highway towards him, another car approaching from the opposite direction and behind the pedestrians, it became the duty of defendant to proceed with care and caution commensurate with the dangerous situation presented. Hence, I am in accord with that part of the majority opinion which holds that the jury's finding on the question of defendant's negligence is binding on the court.

Ben Estes, a special police officer, lived just west of the scene of the accident. A few moments before the crash he passed the pedestrians and, while turning into his driveway, saw the defendant pass going towards Gordonsville. Before his wife had gotten the groceries out of the car at his home he was informed of the accident. He drove to the scene immediately and, finding no one there, proceeded to Gordonsville where he found all the parties involved at the doctor's office.

At that time Elijah Quarles, in the presence of the defendant and others, gave the officer this version of the accident. The officer said: "I asked Toots (Elijah Quarles) how it happened, and he said we were walking home and I had a bag of groceries on my back, I think he said they were her groceries, and they were walking along side by side, just as this car came along

it seemed she went out in front of the car, and he reached out for her, but she had gotten out of his reach. He said Mr. Locker did everything he could to avoid it, but there was no way in the world he could help it.''

The day after the accident Ben Estes and P. P. Herndon, a State police officer, examined the scene of the accident and found a large blood spot 5½ feet from the southern edge of the hard surface. They did not find any blood spots on the dirt shoulder. These officers accepted Elijah Quarles' account of the accident and, after this examination of the highway, took no further steps. Two witnesses for plaintiff said that several days after the accident they examined the scene and found no blood spots on the highway, but did find stains which they assumed to be blood spots on the dirt shoulder.

Elijah Quarles, when called as a witness for plaintiff, denied that he had made the statements quoted above to the special police officer and others. He testified that plaintiff was walking along the highway 2½ feet in front of him and within 6 inches of the edge of the hard surface, that he saw the lights of defendant's car approaching and the lights of one approaching from his rear. When he saw that an impact was imminent he grabbed at plaintiff in vain.

Conceding that the jury had the right to accept as true the testimony Elijah Quarles gave on the stand, there is nothing in it which contradicts the account of the accident as detailed by the plaintiff herself. We have repeatedly held that no litigant can be heard to ask that his case be made stronger than he makes it when, as here, it depends upon facts within his own knowledge and as to which he has testified. *Harrell* v. *Virginia Electric & Power Co., ante,* page 59, 12 S. E. (2d) 833; *Massie* v. *Firmstone,* 134 Va. 450, 114 S. E. 652.

The highway is practically straight and virtually level for several hundred feet in either direction from the point of impact. Plaintiff testified that she was walking on her left side of the hard surface 12 to 18 inches

from the edge of the shoulder. She knew that a car was approaching from the rear on the right side of the highway and one was approaching from the opposite direction on her side of the highway. The pertinent part of her examination on this point is as follows:

"Q. Was there anything to prevent you from seeing it (defendant's car) when it came in sight over the hill?

"A. No, sir, I don't guess it was.

"Q. Where were you looking when you got hit?

"A. I was looking up the road, I saw the car, but I don't know how close it was.

"Q. Why didn't you get out of the way of the car, Mary?

"A. I did get out of the way, I was walking over on the side of the road far enough for it to not strike me.

"Q. How close was the car to you before you saw you were in danger, and that he was going to hit you?

"A. I don't know.

\*    \*    \*    \*    \*

"Q. Did he (defendant) slow down any?

"A. No, sir, he didn't slow down any.

"Q. How far did his car go after it hit you before it stopped, do you know?

"A. No, sir, I don't know.

\*    \*    \*    \*    \*

"Q. Do you know whether a car was coming from behind you or not?

"A. Clarence Johnson was coming behind me.

"Q. Do you know how far he was behind you?

"A. No, sir, I really don't."

The testimony of plaintiff is that she saw defendant's car approaching when it was several hundred feet from her. There was nothing between her and it to obstruct her vision. Heedless of danger, she continued to walk towards it without the slightest change in her course until the moment of impact. She knew, or should have known that the car approaching from behind her would

reduce the clearance space for the car approaching from in front to pass her. She also knew that there was 12 to 18 inches of hard surface and a three-foot dry dirt shoulder on her left. One step, two at most, to her left would have taken her out of the line of approach of defendant's car. Plaintiff offers no explanation for her failure to take any precautions to prevent injury to herself. Her statement is, ''I was walking over on the side of the road far enough for it to not strike me.'' She seems to have assumed that, while walking on the left side of the hard surface, she had the right of way.

This assumption is contrary to the law as stated by Mr. Justice Spratley in *South Hill Motor Co.* v. *Gordon,* 172 Va. 193, 203, 200 S. E. 637, 642, wherein he said: ''It [Code, sec. 2154 (126) (f)] prescribes the portion which may be used by each of them under certain conditions. Under normal conditions the pedestrian must keep as near as reasonably possible to the extreme left side or edge of the highway, and the operator of a motor vehicle must drive upon his right half of the highway. And when it happens that both of them desire, or are required, to use, at the same time, that portion of the highway prescribed for their use, each of them must exercise his respective right to the use with due regard for the right of the other.

''Neither the pedestrian nor the operator of a vehicle, in traveling along the portion of the highway prescribed for the use of each of them has a 'right of way' thereon over the other, except as expressly provided by statute. The mere right to travel on a specified portion of a highway is not to be confused with a 'right of way' thereon superior to the rights of others also entitled to use the highway. The right to the use is an equal and co-ordinate right. Both persons and operators of vehicles are held to the exercise of ordinary care and are bound to respect the rights of each other. And when either observes danger to or from the other, he must exercise or-

dinary and reasonable care to avoid the danger. The duty of each to avoid giving or receiving injury is reciprocal." See Annotations in 67 A. L. R. 96 and 93 A. L. R. 551.

This court has held, from time immemorial, that a plaintiff cannot recover in an action for personal injuries if the evidence shows that such plaintiff failed to use ordinary care and caution to avoid the injury to himself. The opinion in the *South Hill Case* reaffirms this elemental rule and holds that the duties of a motorist and a pedestrian upon a highway are reciprocal. Each must use ordinary care "to avoid giving or receiving injury."

It seems to me that the following statement in the majority opinion ignores this rule: "A reversal of the judgment below would necessitate a holding that, when both motorist and pedestrian apprehend a situation of impending peril, the motorist may hold to his course, and the pedestrian alone must take all the responsibility of avoiding the accident. This amounts to giving the motorist a 'right of way,' and is contrary to any theory of 'equal and co-ordinate' rights."

Plaintiff states positively that she saw the car coming several hundred feet away, and that she did not change her course but walked straight towards it until struck. If a pedestrian, drunk or sober, sees a car coming down the highway straight towards him and continues towards the car without a particle of change in his course, then such person is guilty of failure to use ordinary care for his own safety. If he brings an action against the motorist for personal injuries, such evidence is sufficient to convict him of contributory negligence.

If, in the teeth of this testimony, the above statement, quoted from the majority opinion, conveys the considered judgment of this court, and it is adhered to, then motorists in Virginia become the insurers of the safety

of pedestrians on the highway, and contributory negligence is eliminated as a defense in all such actions.

Browning and Spratley, JJ., concur in this dissent.